**E-FILED on**    7/6/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re COM 21<br><br>        Debtor. | No. C-04-03396 RMW<br><br>ORDER GRANTING MOTION TO WITHDRAW THE REFERENCE AND SETTING CASE MANAGEMENT CONFERENCE<br><br>**[Re Docket No. 1]** |

      Currently pending in the United States Bankruptcy Court for the Northern District of California is *In re Com 21*, Case No. 03-54533-MM, formerly a Chapter 11 but now a Chapter 7 bankruptcy proceeding. In that case, trustee for Com 21, Inc. ("Com 21"), Carol Wu ("trustee"), filed a complaint against defendants Brooks & Raub ("B&R"), David Caplan, L. Donald Raub, Jr., Lincoln Brooks, Penn Ayers Butler, the Law Offices of David M. Serepca, and David Serepca (collectively "defendants") for legal malpractice, seeking to recover damages and a $150,000 retainer paid to B&R. Defendants move to withdraw the reference to bankruptcy court pursuant to 28 U.S.C. § 157(d). Trustee opposes the motion. The court has read the moving and responding papers and heard the argument of counsel. For the reasons set forth below, the court grants the motion to withdraw the reference to the bankruptcy court.

## I. BACKGROUND[1]

### A. Appointment of Brooks & Raub

Debtor Com 21 initially filed for Chapter 11 bankruptcy relief on July 15, 2003, becoming the debtor-in-possession. On that day, the bankruptcy court approved the appointment of B&R as counsel for the debtor-in-possession pursuant to 11 U.S.C. § 328(a). B&R had been retained by Com 21 prior to the bankruptcy filing, commencing its representation of Com 21 in 2002. The moving papers seeking B&R's appointment stated that, prior to filing the bankruptcy petition, Com 21 had deposited $160,000 with B&R, representing advance payment for fees and costs. These payments included $10,000 paid as a retainer upon the commencement of B&R's engagement on August 15, 2002 and additional deposits of $5,000 on June 20, 2003 and $145,000 on June 2, 2003. *See* Application for Authority to Employ Reorganization Counsel for Debtor, Trustee's Request for Judicial Notice ("RJN"), Ex. A ¶ 3; *see also* Disclosure by Brooks & Raub of Compensation, RJN, Ex. B ¶ 2. $10,000 of the $160,000 advance payment was transferred to Bialson, Bergen & Schwab, counsel for the committee of creditors formed prior to the Chapter 11 bankruptcy. RJN, Ex. A ¶ 3. The application stated that the deposits covered $35,631.00 in payment for pre-petition services, with the balance of the $150,000 serving as a deposit for services in connection with the bankruptcy petition. *Id.* The application also acknowledged that all compensation and costs were subject to approval by the bankruptcy court pursuant to 28 U.S.C. §§ 330 and 331. *Id.* ¶ 7.

The application was approved by the bankruptcy court on July 16, 2003 and states that "[a]ll fees received by [Brooks & Raub] shall be subject to approval by this court as reasonable." Order Authorizing Employment of Counsel by Debtor, RJN, Ex. C ¶ 2.

### B. The Malpractice Claim

Thereafter, defendants undertook representation of Com 21 in bankruptcy proceedings before the Northern District of California Bankruptcy Court. As the basis of her malpractice claim, trustee alleges that defendants failed to timely file a motion to reject an unexpired lease of non-residential property located at

---

[1] In support of her opposition to defendants' Motion to Withdraw Reference, trustee requests judicial notice of twenty-four documents relating to the bankruptcy action. Likewise, defendants request judicial notice of the complaint filed against them by the trustee. The parties do not dispute the authenticity of the documents, thus the court grants these requests for judicial notice.

ORDER GRANTING MOTION TO WITHDRAW REFERENCE. - C-04-03396 RMW
MAG                                                                       2

1  800 Tasman Drive in Milpitas, California.  She claims that, although they could have done so at the
2  inception of the bankruptcy, defendants waited until a month and a half into the bankruptcy to file a motion
3  to reject the 800 Tasman lease, resulting in the matter not being heard until two and a half months after the
4  bankruptcy petition was filed.  Although defendants argued that the lease should be rejected retroactive to
5  the date the bankruptcy petition was filed, the landlord opposed.  The Bankruptcy Court ultimately granted
6  the motion to reject the lease as of the date the motion was heard, October 3, 2003.  The rejection of the
7  lease was not granted retroactively because the court determined the landlord had insufficient notice of the
8  debtor's intent to reject the lease.  The landlord subsequently moved for payment of, *inter alia*, the post-
9  petition rent in the amount of $598,664.48.  Because of disputes over the amount of the rent payment and
10 date up to which rent was owed, only an undisputed amount of $235,674.71 was paid to the landlord.  The
11 remaining disputed amount of $362,989.77 was transferred in trust to the landlord's counsel pending further
12 briefing and argument.  In its supplemental briefing, the landlord sought an additional $58,773.04 in late fees
13 and $21,882.52 in attorney's fees and expenses.

14     The hearing on the disputed amount scheduled for December 29, 2003 never occurred because the
15 Com 21 bankruptcy was converted into a case under Chapter 7 on December 9, 2003.  Carol Wu was
16 appointed as the new trustee and given control over the bankruptcy estate.  She entered into a compromise
17 with the 800 Tasman landlord for administrative rent for the amount held in trust plus $68,773.04 in
18 additional fees, which was subsequently approved by the Bankruptcy Court.  According to trustee, the total
19 paid to the landlord for the 800 Tasman lease was $679,320.04.

20     On July 14, 2004, trustee filed an adversary claim for malpractice against defendants, seeking
21 $668,437.52 plus interest for the administrative rent paid on the 800 Tasman lease and attorney's fees and
22 costs incurred negotiating the compromise amount with the landlord.  The complaint also seeks
23 disgorgement of the $150,000 retainer.

24     **C.     Correspondence Between Defendants and Trustee Regarding Claim for Fees**
25     The bar date for the submission of Chapter 11 administrative claims was August 6, 2004.  Brooks
26 & Raub did not file a proof of a Chapter 11 claim before that date.   Trustee's counsel demanded Brooks
27 & Raub return the $150,000 retainer.  Letter from Robert E. White to Margaret M. Schneck, Aug. 23,
28 2004, White Decl., Ex. A.  In his response to trustee's demand, Mr. Raub asserted that Brooks & Raub

had given notice of its unpaid fees and expenses through the debtor's final report and by forwarding invoices to the trustee, stating "Brooks & Raub has made it clear that it expects to be paid the outstanding balance of its fees and expenses by the estate." Letter from L. Donald Raub to Robert E. White, September 3, 2004, White Decl., Ex. C. Raub also acknowledged the malpractice claim and its potential impact on any fee application. *Id.* He then indicated that he would file a fee application if the trustee so insisted. *Id.* ("If the trustee now insists that we file our fee application, we will do so. However, inasmuch as the trustee has indicated she will object to our fee application on the basis of her allegation of malpractice, it does not appear that our fee application can be resolved until we resolve that allegation."). Thereafter, trustee gave Brooks & Raub one week to file a claim for fees and expenses. No claim has been filed.

### D.     Adversary Proceeding

On July 14, 2004, trustee filed an adversary proceeding against defendants alleging malpractice for the failure to timely reject the lease. The complaint seeks both damages for defendants' alleged malpractice and disgorgement of the retainer. Defendants subsequently filed the present motion to withdraw the reference from bankruptcy court, simultaneously filing a request for a jury trial. Defendants' motion to withdraw the reference presents two issues: first, whether a malpractice claim by a trustee against the attorneys of the debtor in possession is a core proceeding and, second, if it is a core proceeding, whether defendants have a right to a jury trial.

## II. ANALYSIS

The United States district courts have original, but not exclusive, jurisdiction over bankruptcy proceedings. 28 U.S.C. § 1334(b); *Sec. Farms v. Int'l Bhd. of Teamsters, et al.*, 124 F.3d 999, 1008 (9th Cir. 1993).  While federal courts have exclusive jurisdiction over all cases under Title 11 of the United States Code, they have concurrent jurisdiction over "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b); *In re Harris Pine Mills*, 44 F.3d 1431, 1434 (9th Cir. 1995). District courts also have the authority to refer bankruptcy proceedings to the bankruptcy judges in their district. 28 U.S.C. § 157(a). Once referred, any party may move the district court to withdraw a reference. 28 U.S.C. § 157(d). Defendants have moved this court to withdraw the reference for its ultimate return to bankruptcy court once the issue has been resolved.

### A. Is the Malpractice Claim a Core Proceeding?

The threshold dispute between the parties is whether the legal malpractice claim is a core matter subject to the jurisdiction of the bankruptcy court. Whether the malpractice claim asserted by the trustee against defendants is a core proceeding bears upon both the jurisdiction of the Bankruptcy Court and whether defendants are entitled to a jury trial.[2]

#### 1. Core Versus Non-Core Proceedings

The Bankruptcy Act of 1978 originally gave bankruptcy courts "jurisdiction over all civil proceedings arising under or related to cases under title 11." 28 U.S.C. § 1471(b), (c). The Supreme Court declared the provision unconstitutional as too broad, holding that Congress may not grant the power to adjudicate "state-created private rights," which are the sole province of Article III courts. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982); *In re Adams*, 761 F.2d 1422, 1424 (9th Cir. 1985). Thereafter, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, creating a distinction between "core" proceedings and "non-core" proceedings.

"Th[e] distinction between core and noncore is important, because it determines how the claims must be treated . . . ." *Harris Mills*, 44 F.3d at 1436. Bankruptcy judges may "hear and determine" core proceedings upon which the bankruptcy court "may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). Judgments in core proceedings are subject to normal appellate review.[3] By contrast, absent consent of the parties, bankruptcy judges may only "hear" non-core proceedings, and are required to submit proposed findings of fact and conclusions of law to the district court for *de novo* review on timely objection. *Id.* § 157(c)(1), (e); *Harris Pine Mills*, 44 F.3d at 1436 ("'In noncore matters, the bankruptcy

---

[2] While the court's determination of whether the action is core or non-core bears on the availability of a jury trial, "the designation of an action as 'core' does not control whether or not the action may be tried before a jury." *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1326 (2d Cir. 1993) ("The determination that the . . . action is 'core' is entitled to minimal weight in reaching our ultimate decision on the jury trial issue.") (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

[3] Judgments entered by a bankruptcy judge in a core proceeding are subject to review in the district court pursuant to 28 U.S.C. § 158(a). (District courts "shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."). Review under § 158(a) is subject to the same standards as applied by the court of appeals in reviewing cases from the district court. *In re Daniels-Head & Assocs.*, 819 F.2d 914, 918 (9th Cir. 1987) ("The district court acts as an appellate court, reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.").

court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or special master.'") (quoting *In re Cinematronics*, 916 F.2d 1444, 1449 (9th Cir. 1990)).

Core matters are defined by 28 U.S.C. § 157(b) as "proceedings arising under title 11, or arising in a case under title 11." *Id.*; *see also In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000) ("In general, a core proceeding in bankruptcy is one that invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). By contrast, "[n]on-core proceedings are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11." *Harris Pine Mills*, 44 F.3d at 1436.

Here, the claim at issue, legal malpractice, is undisputedly not a proceeding "arising under title 11." The question, thus, becomes whether the malpractice claim at issue "arises in" a case under title 11. 28 U.S.C. § 157(b)(2) sets forth a non-exhaustive list of matters that are considered core proceedings that arise in a case under title 11. *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004); *id.* § 157(b)(2)(A)-(O). Of these fifteen provisions, two, (A) and (O), are considered "catch-all" categories. "[C]ore jurisdiction statutorily includes 'matters concerning the administration of the estate,' 28 U.S.C. § 157(b)(2)(A) and 'other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . .'" *Id.* at § 157(b)(2)(O)." *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).

Where claims fall under the literal wording of the catch-all categories, courts have differed regarding what claims are to be considered core as opposed to related matters. While other circuits have determined that "core proceedings" should be read broadly, "close to or congruent with constitutional limits," *see, e.g., In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir. 1987), the Ninth Circuit has adopted a relatively narrow interpretation, requiring something more than literal applicability of the catchall provisions. *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986) ("[S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)."). *Compare In re Coastal Plains, Inc.*, ___ B.R. ___, 2005 WL 1221145 at *6 (Bankr. N.D. Tex. 2005) ("To be sure, this action for breach of a fiduciary duty arises from the Trustee's administration of the bankruptcy case and necessarily involves his

ORDER GRANTING MOTION TO WITHDRAW REFERENCE. - C-04-03396 RMW
MAG                                                                      6

services to the Debtor's estate. Simply put, this claim could not arise were it not for the underlying bankruptcy case.") *with In re ACI-HDT Supply Co.*, 205 B.R. 231, 236 (B.A.P. 9th Cir. 1997) ("[A] state law claim against a non-debtor in his individual capacity . . . not fall[ing] squarely within § 157(b)(2)(B)-(N) could not be a core proceeding merely by virtue of the catch-all provisions of § 157(b)(2)(A) or (O).") (citing *Cinematronics*, 916 F.2d at 1450).[4]

The Ninth Circuit has defined core proceedings to include administrative matters that arise only in bankruptcy and would have no existence outside of the bankruptcy. *Harris Pine Mills*, 44 F.3d 1435; *In re Eastport*, 935 F.2d 1071, 1076 (9th Cir. 1991) (quoting *In re Wood*, 825 F.3d 90, 96-97 (5th Cir. 1987)). The question, then, is whether the legal malpractice claim at issue constitutes an administrative matter that arises only in bankruptcy cases. It would seem that the answer depends upon how the court views the claim. Defendants assert that the court need only determine that the malpractice claim does not depend upon the Bankruptcy Code for its existence and that it may have been brought in the district court to find it to be non-core. *See, e.g., Dunmore*, 358 F.3d at 1116 ("We previously explained that the refund claims are non-core proceedings. They do not depend on the Bankruptcy Code for their existence and could have been brought in the district court."). Trustee, on the other hand, relying on *Harris Pine Mills*, argues that the court's inquiry must be more fact-intensive, examining the subject matter of the malpractice claim and whether the malpractice claim could have existed absent the context of the bankruptcy proceedings.

Defendants contend that the malpractice action is not a core proceeding because (1) they are non-debtors, and (2) plaintiff's state law claim for malpractice undisputedly does not fall within § 157(b)(2)(B)-(N) and is not inextricably intertwined with the bankruptcy proceedings. However, as asserted by defendants, *Harris Pine Mills* implies that the court must examine the factual circumstances surrounding the claim and the impact of its resolution on the estate more closely. In that case, the Ninth Circuit determined that "postpetition state law claims asserted against the bankruptcy trustee and his agents for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction." *Harris Pine Mills*, 44 F.3d at 1437. As *Harris Pine*

---

[4] This approach has been rejected by the First and Third Circuits. *See, e.g.*, *In re Billing*, 150 B.R. 563, 566 (D.N.J. 1993) *rev'd on other grounds sub nom. by Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994).

*Mills* provides the Ninth Circuit's most recent published determination that a proceeding is core, a comparison of the facts in that case with those in this case is helpful.

### 1. "Postpetition state law claims"

Actions based upon postpetition conduct connected with a bankruptcy proceeding are more likely to be found core than prepetition actions. *Cf. In re ACI-HDT Supply Co.*, 205 B.R. 231, 237 (B.A.P. 9th Cir. 1997) (finding the claims to be non-core, *inter alia*, because the actions against non-debtor parties were for conduct arising prepetition). Here, there can be no dispute that the actions giving rise to the alleged state law claim for malpractice occurred postpetition, as the defendants allegedly failed to timely reject the lease after they were appointed as counsel for the debtor in possession by the Bankruptcy Court.

### 2. "Asserted against the trustee or his agents"

The parties do not dispute that the malpractice claim is asserted against an agent of the debtor in possession. Defendants, however, point out a key distinction in this case as compared to others: the malpractice claim has been brought by the trustee herself rather than by a third party against the attorneys acting as an agent for the trustee. Other cases weighing this factor in favor of finding a matter to be core assume that the claim is asserted against the agent acting on behalf of the debtor. *In re DeLorean Motor Co.*, 155 B.R. 521, 525 (B.A.P. 9th Cir. 1993) (state court action against court-appointed counsel for trustee was the functional equivalent of suit against the trustee and thus a core proceeding under § 157(b)). Here, by contrast, the malpractice claim stems from an adversarial relationship between the trustee and the agent.

Notwithstanding that it is the trustee asserting the malpractice action against the debtor in possession's former bankruptcy counsel, the relationship of defendants to the bankruptcy proceedings weighs in favor of finding the malpractice action to be a core proceeding. The choice of bankruptcy counsel is approved by the court; attorney's fees paid to counsel are likewise approved by the court. Bankruptcy counsel is more than a disinterested third party unwillingly brought into Bankruptcy Court. Its presence there is of its choosing and its purpose there is to advise its client with regard to administering the estate. The court finds that defendants' connection to the bankruptcy proceedings weighs strongly in favor of finding the action to be core.

### 3. "For conduct inextricably intertwined with trustee's sale of property . . ."

The trustee's malpractice claim arose out of defendants' alleged failure to properly reject a lease, a property interest of the bankruptcy estate. Defendants contend that the main point of distinction with regard to the subject matter is that the type of property interest and the disposition of the property interest. While *Harris Pine Mills* involved the sale of property, this case involves the failure to timely reject a lease. The distinction is not material, however, because the underlying conduct involved the disposition of a property interest of the bankruptcy estate.

The more important question is whether the defendants' conduct at issue was inextricably intertwined with the bankruptcy. There can be little question that the conduct is based upon defendants' alleged failure to timely exercise a right only available under bankruptcy law. Absent the bankruptcy, the malpractice claim would have never arisen. However, the Ninth Circuit has not articulated a standard for determining whether the conduct is "inextricably intertwined" and *Harris Pine Mills* is not entirely clear about precisely what type of conduct is inextricably intertwined.

Defendants cite an unpublished, pre-*Harris Pine Mills*, district court case from this circuit in support of their argument that the instant malpractice claims are not inextricably intertwined with the bankruptcy proceeding. Addressing nearly identical claims by a trustee against bankruptcy counsel for failing to reject a lease, the District of Oregon court found that malpractice claims "arise under state negligence law and are not 'core' proceedings involving federal bankruptcy concerns such as the restructuring of the debtor-creditor relationship." *In re Melridge*, 1990 WL 84500 (D. Or. 1990). Making its decision, the court in *In re Melridge* cites the language of the core proceeding catch-all provision, 28 U.S.C. § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . ."), rather than of 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate").

Published cases in the Ninth Circuit shed little light on the inquiry. However, in *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003), the Fourth Circuit held that its interpretation of "arising in" jurisdiction "surely means that jurisdiction exists over a malpractice claim against a lawyer for providing negligent advice to a debtor in a bankruptcy case." *Id.* at 471-72. In *In re SPI Communications & Marketing*, 112 B.R. 507 (N.D.N.Y. 1990), the Northern District of New York found a legal malpractice

1  action to be integrally related to the bankruptcy action, and thus a core matter, because the dispute was
2  over the legal advice and actions taken by the lawyers in handling the bankruptcy matter.
3        These courts, however, appear to apply a more liberal interpretation of the catch-all provisions than
4  does the Ninth Circuit. *In re Billing*, 150 B.R. at 565-66.  The Ninth Circuit's formulation of this aspect of
5  the test appears to be based on the Bankruptcy Appellate Panel's decision in *DeLorean*, 155 B.R. at 525
6  ("Under this analysis, a proceeding will not be considered a core matter, even if it falls within the literal
7  language of sections 157(b)(2)(A) or 157(b)(2)(O), if it is a state law claim that could exist outside of
8  bankruptcy and is not inextricably bound to the claims allowance process or a right created by the
9  Bankruptcy Code.") (citing *Eastport Associates*, 935 F.2d at 1076-77 and *Castlerock Properties*, 781
10 F.2d at 161).  In *DeLorean*, the court determined that the state law claim asserted, in addition to being "the
11 functional equivalent of an action against the trustee" was "inextricably tied to the determination of an
12 administrative claim against the estate and is similarly tied to questions concerning the proper administration
13 of the estate." *Id.*
14       Here, the belated rejection of the lease is in the past.  The bankruptcy court has made its
15 determination regarding the claim at issue and that determination is the basis of the malpractice claim.
16 Defendants contend that the resolution of this claim will have no ongoing impact on "the proper
17 administration of the estate."  Recognizing that one of the claims at issue is disgorgement of a retainer paid
18 to bankruptcy counsel for purposes of bankruptcy services, defendants point out that the Ninth Circuit
19 requires courts to analyze claims separately. *Dunmore*, 358 F.3d at 1114.  Doing so, argue defendants,
20 results in two distinct claims:  disgorgement of the retainer, which arguably affects the administration of the
21 estate because it is money paid out of the estate; and a claim for damages for alleged malpractice, which
22 does not.  The damages claim, defendants assert, is distinct, non-core, and warrants withdrawal of the
23 reference.
24       Defendants' position has some appeal, however, even considering the malpractice claims
25 separately, both are inextricably intertwined with the administration of the estate.  Neither *Delorean* nor
26 *Harris Pine Mills* states a requirement for ongoing impact to the administration of the estate: on the facts of
27 those cases, the resolution of the claims at issue would have an impact on the bankruptcy administration in
28 progress, but that does not appear to be the sole basis for the courts' decisions.  This action, like *Delorean*

1  "arises from the efforts of officers of the estate to administer the estate and collect its assets and therefore
2  impacts the handling and administration of the estate." *Delorean*, 155 B.R. at 525.  Applying *Harris Pine*
3  *Mills*, the court concludes that the malpractice action by the trustee against bankruptcy counsel for the
4  debtor-in-possession is a core proceeding and subject to the jurisdiction of the bankruptcy court with
5  respect to both disgorgement and damages .

6      **B.**    **Jury Trial**

7      Defendants have demanded a jury trial but have not consented that the jury trial be conducted
8  before the bankruptcy court.  They contend that the bankruptcy court may not preside over a jury trial
9  absent their express consent.

10          **1.**    **Consent to a Jury Trial Before the Bankruptcy Court**

11      Prior to 1994 and the addition of 28 U.S.C. § 157(e), district courts in this circuit considering
12  whether bankruptcy courts could conduct jury trials in core proceedings had split on the issue.  *Compare*
13  *In re Interbank Mortgage Corp.*, 128 B.R. 269, 270 (N.D. Cal. 1991) (Conti, J.) (bankruptcy courts
14  have been granted the authority to conduct jury trials and the grant is constitutional) *with In re Palomar*
15  *Electric Supply, Inc.*, 138 B.R. 959 (S.D. Cal. 1992) (Thompson, J.) and *In re Transcon*, 121 B.R. 837
16  (C.D. Cal. 1990) (bankruptcy courts may not conduct jury trials).  The issue was rooted in the Seventh
17  Amendment's right to a jury which provides that "no fact tried by a jury shall be otherwise reexamined in
18  any court of the United States, than according to the rules of common law." U.S. Const. amend. VIII.
19      Congress, however, has since provided guidelines regarding jury trials in Bankruptcy Court.  28
20  U.S.C. § 157(e), which Congress enacted in 1994 as part of the Bankruptcy Reform Act, provides: "If the
21  right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the
22  bankruptcy judge may conduct the jury trial if specially designated  to exercise such jurisdiction by the
23  district court and *with the express consent of all parties*." 28 U.S.C. § 157(e) (emphasis added).  This
24  section makes it clear that in all cases in which there is a right to a jury trial, the parties must expressly
25  consent to a jury trial before the bankruptcy court.  *See In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003)
26  ("[T]he bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and
27  the district court. 28 U.S.C. § 157(e)."); *see also In re Lars Inc*., 290 B.R. 467, 469 n.4 (D.P.R. 2003)
28  ("Prior to 1994, the federal courts had struggled with the issue of whether Bankruptcy Courts could hold

ORDER GRANTING MOTION TO WITHDRAW REFERENCE. - C-04-03396 RMW
MAG                            11

1  jury trials, and if so, whether Congress had actually granted them the power to do so.  The enactment of §
2  157(e) disposed of any lingering doubts on that score.").

3  There is little question (and the parties do not dispute) that malpractice is generally a legal claim.
4  *See United States v. Fotopulos*, 180 F.2d 631, 634 (9th Cir. 1950).  Nevertheless, the trustee argues
5  that defendants are not entitled to a jury trial in this matter.  They provide two bases for this argument: (1)
6  where counsel has agreed to be bankruptcy counsel subject to approval by the bankruptcy court, with fees
7  likewise to be approved by the bankruptcy court, counsel submits to the equitable jurisdiction of the
8  bankruptcy court for matters involving actions taken before the bankruptcy court and (2) defendants' intent
9  to submit a fee application to the bankruptcy court constitutes a claim in the bankruptcy court, thus, they
10 have lost their right to a jury trial.

11 **2.      Bankruptcy Court's Equitable Jurisdiction**

12 In general, a Bankruptcy Court's equitable jurisdiction adheres where a defendant has made filed
13 proof of claim against the estate, because the defendant has voluntarily submitted to the process of
14 allowance and disallowance of claims adjudicable by the bankruptcy court.  *Granfinanciera, S.A. v.*
15 *Nordberg*, 492 U.S. 33, 57-59 (1989). If that claim is met with an adversary proceeding the result of
16 which impacts the restructuring of debtor-creditor or creditor-creditor relations, the defendant's right to a
17 jury trial is lost, no matter whether the adversarial proceeding concerns traditionally legal claims.  *Id.* at 58-
18 59.  However, a proceeding cannot be governed by the Bankruptcy Court's equitable jurisdiction where
19 the trustee reaches outside the bankruptcy to bring an action against a party who has not otherwise
20 submitted to the jurisdiction of the Bankruptcy Court.  *See Langenkamp v. Culp*, 498 U.S. 42, 43-45
21 (1990) (where the bankruptcy trustee seeks to recover an allegedly fraudulent transfer in an adversary
22 proceeding from a defendant who has not filed a claim against the estate, the defendant is entitled to a jury
23 trial).  Therefore, a creditor's right to a jury trial on traditionally legal claims arising in an adversary
24 proceeding depends on: "(1) whether the creditor has filed a proof of claim against the bankruptcy estate,
25 *see Langenkamp*, 498 U.S. at 45 (quoting *Granfinanciera*, 492 U.S. at 58); and (2) whether the
26 resolution of the proceeding affects the allowance of the proof of claim, *see Germain [v. Conn. Nat'l*
27 *Bank]*, 988 F.2d [1323,] 1327 [2d Cir. 1993]." *In re CBI Holding*, 311 B.R. 350, 366 (S.D.N.Y.
28 2004).

ORDER GRANTING MOTION TO WITHDRAW REFERENCE. - C-04-03396 RMW
MAG                                                                        12

### a. Informal Proof of Claim

Trustee first seeks to demonstrate that defendants have, for all practical purposes, filed a proof of claim before the Bankruptcy Court, and thereby have submitted to the equitable jurisdiction of the Bankruptcy Court. Case law establishes that a party need not make a proof of formal claim to be considered to have submitted to the equitable jurisdiction of the Bankruptcy Court. See, e.g., *Peachtree Lane Assoc., Ltd. v. Granader*, 175 B.R. 232, 236 (N.D. Ill.1994) (defendants in an adversary action waived their right to a jury trial by filing counterclaims and successfully seeking an extension of the bar date so that their counterclaims could be treated as proofs of claim against the estate); *In re Hudson*, 170 B.R. 868, 874 (E.D.N.C. 1994) ("convincing authority has held that a counterclaim does qualify as a 'claim' for purposes of the . . . *Granfinanciera* and *Langenkamp* private rights jury trial analysis . . . the defendant's filing of a counterclaim caused the defendant to lose its Seventh Amendment right to jury trial"); *In re Americana Expressways, Inc.*, 161 B.R. 707, 714 (D. Utah) ("By presenting a [defense which, in reality, presents a counterclaim against the estate], Defendant has submitted to the bankruptcy court's equity jurisdiction and is not entitled to a jury trial").

Trustee contends that defendants have acknowledged that the filing of a fee application is only a formality, and that the correspondence between trustee's counsel and Mr. Raub constitutes an informal proof of claim, particularly in light of defendants' assertion that they are willing to proceed with filing such claim for attorney's fees. Although it is clear that a potential claimant against the estate can assert an informal proof of claim for purposes of meeting the administrative bar date for filing claims, trustee cites no authority for asserting that trustees may assert the existence of an informal proof of claim in order to subject a claimant to the equitable jurisdiction of the Bankruptcy Court without further action by the potential claimant. To hold that the expression of intent to file a claim for fees automatically triggers the process of allowance and disallowance of claims would result in trustees being capable of subjecting a potential claimant to the equitable jurisdiction of the Bankruptcy Court without that claimant's having made an affirmative claim whenever a trustee can demonstrate the ingredients for an informal proof of claim. *Cf. Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) ("[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) (wherever possible, the constitutional right to a jury trial must be preserved).

### b.     Appointment by Bankruptcy Court

Trustee next argues that, even without having submitted a formal or informal proof of claim or fee application, the attorney defendants have submitted to the equitable jurisdiction of the Bankruptcy Court and are thus not entitled to a jury trial. Trustee supports her argument on two grounds: first, the disgorgement action is essentially an objection to the attorney's fees that will be claimed by appointed counsel and, second, bankruptcy counsel submits to the equitable jurisdiction of the Bankruptcy Court by virtue of accepting representation approved by that court.

She cites a Third Circuit case in support of her contention that her malpractice claim against defendants is subject to the equitable jurisdiction of the Bankruptcy Court. In *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994), the Third Circuit applied *Katchen* and its progeny to determine whether a malpractice claim asserted against the bankruptcy attorneys required a jury trial. There, the court noted that a claim for malpractice was closely related to the court's resolution of attorney's fees. *Id.* at 1252. Accordingly, "[t]o the extent that . . . the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success means the disallowance of the attorney's claim, [the court] agree[s] that the debtors objection was part of the claim-allowance process." *Id.* The court then held that the attorney defendants had no right to a jury trial. *Id.* at 1253 ("We hold that an allegation of legal malpractice raised as a defense to post-petition claims for bankruptcy counsel likewise falls within the process of the allowance and disallowance of claims. The debtors have no Seventh Amendment rights . . . because their claim has been converted from a legal one into an equitable dispute over a share of the estate.").

Again, defendants cite *Dunmore* for the proposition that the court must separately analyze trustee's claims for disgorgement and damages for their alleged malpractice. *Dunmore*, F.3d at 1114. Even assuming that the claim for repayment of the retainer were correctly considered to be an objection to an as-yet-asserted fee claim, the damages trustee separately seeks cannot be considered to be an objection to a fee request. Such damages are not sufficiently related to the process of the allowance and disallowance of claims.

Trustee's second argument, emphasized at oral argument, is that defendants have submitted to the equitable jurisdiction of the Bankruptcy Court by having been approved as counsel for the debtor in

possession. She asserts that neither party would have a right to a jury trial in a dispute between a trustee and bankruptcy counsel, irrespective of whether a portion of the estate is at stake. In support of this position, the trustee argues that defendants' employment was authorized by the bankruptcy court pursuant to 11 U.S.C. § 328(a), and their conduct is monitored by the bankruptcy court, which ultimately must approve payment of all fees received by the firm, 11 U.S.C. § 330. The court has found no authority for such a broad conversion of legal claims to equitable ones. Even the Third Circuit's *Billing* case notes that the debtor's objections to attorney's fees rested heavily on their claims of malpractice. Based on both the fee claim and the statutory provisions for Bankruptcy Court approval of counsel and discretionary determination of fee amounts, the Third Circuit determined that the malpractice claims were interrelated with the allowance and disallowance process. *Billing*, 22 F.3d at 1252; *see also id.* at 1253 ("Bankruptcy fee claims do not in any way implicate the Seventh Amendment right to jury or any Article III issue."). The court does not read *Billing* as mandating the sweeping conclusion that all disputes between a bankruptcy trustee and counsel are automatically equitable claims without a right to a jury trial. Defendants are entitled to a jury trial on the malpractice claims.

**C.     Permissive Withdrawal**

28 U.S.C. § 157(d) governs mandatory withdrawal of matters from Bankruptcy Court, and provides in relevant part: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Mandatory withdrawal is not at issue here, as the legal malpractice here asserted is a state law claim and does not require the consideration of any federal law "regulating organizations or activities affecting interstate commerce."

The same section provides district courts the authority to withdraw a reference to the bankruptcy court "for cause shown." 28 U.S.C. § 157(d). Whether cause exists is a matter generally left to the district court's discretion. *In re Cinematronics*, 916 F.2d at 1451 (citing *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985)). In determining whether cause exists, a district court should consider: (1) the efficient use of judicial resources; (2) delay and costs to the parties; (3) uniformity of bankruptcy administration; (4) the prevention of forum shopping; and (5) other related factors. *Security Farms v. Int'l*

ORDER GRANTING MOTION TO WITHDRAW REFERENCE. - C-04-03396 RMW
MAG                                                                     15

*B'hd of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).  While the first four enumerated factors favor resolution of the malpractice claim in bankruptcy court, because defendants have a right to a jury trial, have not waived that right, and have not consented to a jury trial before the bankruptcy court, the court finds that it must withdraw the reference.

### III.  ORDER

For the foregoing reasons, the court grants defendants' motion to withdraw the reference.  A case management conference will be held in this court on July 29, 2005 at 10:30 a.m.

DATED:     7/6/05                             /s/ Ronald M. Whyte
                                              RONALD M. WHYTE
                                              United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Trustee:**
Robert E. White                                              rew@rwhitesf.com

**Counsel for Defendants:**
Margaret M. Schneck                                    mms@r-winc.com

Counsel are responsible for distributing copies of this order to co-counsel, as necessary.

**A copy of this order was faxed to:**

**United States Bankruptcy Court:**

The Honorable Arthur S. Weissbrodt
United States Bankruptcy Court for the Northern District of California
280 S. First Street
San Jose, CA 95113
(408) 535-5124 (facsimile)

**Dated:**     7/6/05                              /s/ MAG
                                                   **Chambers of Judge Whyte**